UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

QUENTIN KEEFE,
plaintiff,

v.

LENDUS, LLC,
defendant.

Civil Action No.: _____

# COMPLAINT

**(Jury Trial Demanded)**

1. Quentin Keefe ("Plaintiff" or "Keefe") complains against LendUs, LLC ("Defendant" or "LendUs") to recover benefits due to Keefe pursuant to the terms of employee benefits plan and offer letter.

2. This action is necessary because Keefe's employment agreements with LendUs and its predecessors in interest provided him with certain benefits, including participation in a "Top Hat" executive compensation program, as well as bonuses for assisting in the acquisition of other entities. After his employment ended, LendUs failed to pay Keefe the benefits owed to him. Moreover, LendUs has not responded to Keefe's administrative claims for benefits, and Keefe has no further administrative remedies available to him.

# PARTIES

3. Keefe is an individual formerly employed by Regency Mortgage Corp. ("Regency") and its successor LendUs. Keefe currently resides at 1653 West Side Road, North Conway, NH 03860.

1

4. LendUs is a limited liability corporation formed under the laws of Delaware and authorized to transact business in New Hampshire, and it is the successor in interest to Regency. The principal office address of LendUs is 3240 Stone Valley Road West, Alamo, California 94507, and the office of its registered agent in New Hampshire is 2 1/2 Beacon Street, Concord, New Hampshire, 03301.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e) (Civil Enforcement), 28 U.S.C. § 1331 (Federal Subject Matter Jurisdiction), 28 U.S.C. § 1332 (Diversity Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

6. This Court has personal jurisdiction over LendUs for the reasons alleged herein including because the facts giving rise to this action occurred in New Hampshire and LendUs is registered to do business, and it in fact does business, in the State of New Hampshire, and because 29 U.S.C. § 1132(e)(2) confers nationwide service of process authority.

7. Venue is proper in New Hampshire pursuant to 29 U.S.C. § 1132(e) (Civil Enforcement) and 28 U.S.C. § 1391(b) because LendUs may be found in New Hampshire and the breach of its obligations to Keefe took place in New Hampshire.

## FACTS

### Keefe and Regency

8. Keefe was a co-founder and the chief executive officer of Regency.

9. Regency was in the business of mortgage origination.

Keefe sells Regency to RPM Holdings I, LLC

10. On or about December 1, 2014, Keefe entered into a Stock Purchase Agreement for the sale of Regency with RPM Holdings I, LLC, which was a wholly owned subsidiary of RPM Mortgage, Inc. ("RPM"). RPM was the sole member of RPM Holdings I, LLC.

11. RPM was a California corporation also engaged in the business of mortgage origination.

12. As a result of the Stock Purchase Agreement, Regency became a wholly owned subsidiary of RPM.

13. As a condition of the transaction, Keefe was offered employment by RPM as president and chief executive officer of Regency, RPM's new subsidiary.

14. Pursuant to that arrangement, Keefe and RPM entered into an employment agreement whereby Keefe received a salary as well as additional compensation in the form of an Executive Incentive Bonus Program (the "Program").

The Program

15. A true and accurate copy of the Program is attached hereto as **Exhibit 1** and incorporated herewith as if restated in full.

16. Pursuant to the terms of the Program, Keefe is entitled to: an annual bonus paid with respect to each fiscal year after the Effective Date of the Stock Purchase Agreement ("Annual Bonus"); and payment of a Bonus Settlement Amount ("Bonus Settlement Amount").

17. Keefe is also entitled, as a condition to his employment, to payment of a separate annual bonus contingent upon the successful acquisition of Mortgage Financial, Inc. ("MFI"), another mortgage company (the "MFI Bonus"). The MFI Bonus is not a part of the Program.

## The 2018 Annual Bonus

18. Paragraph 2.1 of the Program provides that:

As additional consideration for Executive employment with Regency, while Executive is employed by Regency, Regency shall pay an annual bonus to Executive with respect to each fiscal year (or portion thereof) of Regency ending after the Effective Date in an amount equal to the Annual Bonus Amount.

19. Paragraph 1.1 of the Program defines "Annual Bonus Amount" as "with respect to each fiscal year of Regency (or portion thereof) twenty percent (20%) of the Net Profits for such fiscal year (or portion thereof) …"

20. Keefe received an Annual Bonus for fiscal years 2015, 2016, and 2017 in accordance with the terms of the Program.

21. Keefe is owed an Annual Bonus for fiscal year 2018 under the terms of the Program and has not received such Annual Bonus payment.

22. Upon information and belief, the value of Keefe's Annual Bonus for fiscal year 2018 is currently calculated to be at least approximately One Million Twenty-Seven Thousand One Hundred Sixteen Dollars ($1,027,116).

## The Bonus Settlement Amount

23. Paragraph 3.1 of the Program also entitles Keefe to the Bonus Settlement Amount payable within sixty (60) days of the later of either: (1) the fifth anniversary of the Effective Date, or (2) the termination of Keefe's employment with Regency.

24. The payment of this Bonus Settlement Amount amounts to the equivalent of the then-present value of Keefe's twenty percent (20%) interest in Net Profits of Regency's Business.

25. Paragraph 3.1 of the Program further provides that the Bonus Settlement Amount is "determined without regard to the effect of termination of Executive's employment and entitlement to an annual bonus under the Program."

26. In the event Keefe's employment with Regency were to terminate prior to the fifth anniversary of the Effective date, then the Bonus Settlement Amount would be awarded based upon the formula set forth in Paragraph 3.1 of the Program.

27. More than sixty days have elapsed since the termination of Keefe's employment with Regency, and Keefe has not received the Bonus Settlement Amount to which he is entitled.

28. Upon information and belief, the amount of the Bonus Settlement Amount is at least approximately Three Million Five Hundred Nine-Two Thousand Four Hundred Seventy-One Dollars ($3,592,471).

The MFI Bonus

29. Keefe's December 1, 2014 Offer Letter from RPM included "a separate contingent annual bonus incentive during the term of [his] employment with Regency" based upon the successful acquisition of MFI.

30. A true and accurate copy of the Offer Letter is attached hereto as **Exhibit 2** and incorporated herewith as if restated in full.

31. The MFI Bonus entitled Keefe to a separate bonus calculated in accordance with the formula set forth in the Offer Letter if "RPM and/or [RPM Holdings I, LLC] successfully close on the acquisition of the assets of … MFI and such assets are assigned to Regency."

32. The Offer Letter further provided that "[i]f the business assets of MFI are combined with Regency or RPM (or [RPM Holdings I, LLC], if applicable), then we **will** discuss and agree on a process that allows us to track the performance of the MFI business or we **shall**

agree on a formula that gives you the equivalent of the bonus specified above." (emphasis added).

33. On March 30, 2017, MFI merged with RPM's successor entity, LendUs, and MFI's business assets were therefore combined with those of RPM's successor entity, LendUs.

34. LendUs has not discussed and agreed on a process that allows the parties to track the performance of MFI business, nor has LendUs agreed on a formula that gives Keefe the equivalent of the bonus amount discussed in the Offer Letter.

35. Keefe is entitled to the MFI Bonus under the terms of the Offer Letter.

36. Keefe has not been paid the MFI bonus due under the Offer Letter.

37. Upon information and belief, the value of the MFI bonus due and owing to Keefe under the terms of the Offer Letter is at least approximately One Million Forty Thousand Dollars ($1,040,000.00).

## LendUs is Regency's successor in interest

38. On January 12, 2017, Regency filed Articles of Charter Surrender with the New Hampshire Secretary of State. Regency's Articles of Charter Surrender state that it was being re-incorporated in Delaware as LendUSA, LLC.

39. On January 12, 2017, LendUSA, LLC incorporated in Delaware and is the successor in interest to Regency.

40. LendUSA, LLC subsequently changed its corporate name to LendUs, LLC (*i.e.*, "LendUs").

41. Regency's website states that it no longer exists as a separate legal entity but rather as a division of LendUs operating under the tradename "Regency Mortgage."

Keefe's Termination

42. Keefe was employed by Regency until it was reincorporated as LendUs.

43. From the time Regency was reincorporated as LendUs, Keefe continued to be an employee of LendUs under the same employment agreements.

44. Prior to Keefe's termination of employment with LendUs, Keefe and E. Robert Hirt, Chief Executive Officer of LendUs, attempted to negotiate Keefe's early retirement from LendUs in advance of the fifth anniversary of the Effective Date of the Stock Purchase Agreement.

45. These negotiations were ultimately unsuccessful and, on December 31, 2018 LendUs terminated Keefe's employment.

LendUs has failed to respond to Keefe's efforts to resolve his claims

46. To date, Keefe has not received any of the payments for his 2018 Annual Bonus, the Bonus Settlement Amount, or the MFI Bonus.

47. On January 29, 2019, Keefe sent a Demand Letter to LendUs informing LendUs that it either owed or would soon owe Keefe the deferred compensation payments under the Program for the 2018 Bonus and the Bonus Settlement Amount. The Demand Letter also informed LendUs that the MFI Bonus was due and owing.

48. A true and accurate copy of the Demand Letter is attached hereto as **Exhibit 3** and incorporated herewith as if restated in full.

49. Keefe received no response to his Demand Letter, nor any payments due under the Program.

50. On May 9, 2019, Keefe submitted a Claim for Benefits concerning the 2018 Bonus and the Bonus Settlement Amount to LendUs via email and Certified Mail.

51. On May 17, 2019, Keefe obtained receipt from the United States Postal Service that the Claim for Benefits was received by LendUs.

52. A true and accurate copy of the Claim for Benefits and the receipt are attached hereto as **Exhibit 4** and incorporated herewith as if restated in full.

53. Article 7 of the Program establishes claims procedures for the 2018 Bonus and the Bonus Settlement Amount. Among other provisions: Paragraph 7.2(a) provides that the Administrator shall decide all claims for benefits within 90 days after the submission of such claim; Paragraph 7.2(a) also provides that, should the Administrator determine that it needs an extension of time to process the claim, it may extend the date by which a decision is required to 180 days after the claim was submitted if it notifies the claimant in writing; Paragraph 7.2(b) requires that a written notice of decision on each claim be furnished "reasonably promptly" to the claimant. If the claim is denied, in whole or in part, then such written notice shall set forth the specific reasons for the denial.

54. Keefe received no response whatsoever from LendUs in response to both his January 29, 2019 Demand Letter and his May 17, 2019 Claim for Benefits.

55. Keefe has made a good faith attempt to comply with, and has in fact complied with, the administrative remedies set forth in the Program in order to comply with the terms of the Program.

56. Keefe's Demand Letter and Claim for Benefits have been ignored, and as such are deemed denied.

57. LendUs has not paid Keefe the claimed benefit payments due and owing under the Program.

58. LendUs has failed to comply with the Program's claims procedures set forth in Paragraph 7.2 of the Program.

59. As a direct result of LendUs's failure to respond to Keefe's Claim for Benefits, Keefe is without further administrative remedies and such administrative remedies are therefore deemed exhausted.

## COUNT I
## CIVIL ENFORCEMENT OF THE PROGRAM
## 29 U.S.C. § 1132(a)(1)(B)
## (2018 Annual Bonus)

60. Keefe incorporates all paragraphs herein as if fully restated.

61. Keefe is a Program participant.

62. The Program is governed by the enforcement provisions of 29 U.S.C. § 1132.

63. Keefe's 2018 Annual Bonus constitutes a Program benefit to which Keefe is owed and is seeking to recover.

64. The Program required that LendUs pay Keefe an Annual Bonus for each fiscal year where Keefe was employed.

65. Keefe was employed by LendUs for the full fiscal year of 2018.

66. Keefe's employment with LendUs terminated on December 31, 2018.

67. Keefe was owed the 2018 Annual Bonus benefit on March 31, 2019.

68. LendUs has not paid Keefe the 2018 Annual Bonus that he is owed under the Program.

69. By the facts alleged throughout and including herein, LendUs has violated those provisions of the Program which entitle Keefe to the 2018 Annual Bonus Program benefit.

70.   Keefe claims all damages that he is entitled to under this cause of action as a consequence of LendUs's conduct.

## COUNT II
## CIVIL ENFORCEMENT OF THE PROGRAM
## 29 U.S.C 1132(a)(1)(B)
## (Bonus Settlement Amount)

71.   Keefe incorporates all paragraphs herein as if fully restated.

72.   The payment of the Bonus Settlement Amount constitutes a Program benefit to which Keefe is owed and is seeking to recover.

73.   The Program requires that LendUs pay Keefe a Bonus Settlement Amount calculated in accordance with the terms of the Program within 60 days of the termination of his employment.

74.   Keefe's employment with LendUs terminated on December 31, 2018.

75.   Keefe was owed the Bonus Settlement payment benefit on March 1, 2019.

76.   LendUs has not paid Keefe the Bonus Settlement Amount payment that he is owed under the Program.

77.   By the facts alleged throughout and including herein, LendUs has violated those provisions of the Program which entitle Keefe to the Bonus Settlement Amount Program benefit.

78.   Keefe claims all damages that he is entitled to under this cause of action as a consequence of LendUs's conduct.

## COUNT III
## BREACH OF CONTRACT
## (MFI Bonus)

79.   Keefe incorporates all paragraphs herein as if fully restated.

80.   The Offer Letter sets forth the conditions of Keefe's employment with Regency and subsequently LendUs as its successor.

81. Keefe accepted the terms of the Offer Letter.

82. Keefe's acceptance of the terms of the Offer Letter established a contract between Keefe and Regency, which LendUs succeeded.

83. One of the terms of the Offer Letter required that Regency discuss and agree on a formula to calculate the MFI Bonus amount in the event RPM or RPM Holdings I, LLC acquired MFI, and to pay Keefe an annual bonus in accordance with that bonus amount.

84. LendUs is successor in interest to RPM.

85. LendUs merged with MFI on March 31, 2017.

86. Keefe is entitled under the terms of the Offer Letter to an MFI Bonus for 2018, and a partial bonus for 2017.

87. LendUs never determined an appropriate formula to calculate the MFI Bonus.

88. LendUs never paid Keefe the MFI bonus in accordance with the terms and of the Offer Letter.

89. By the facts alleged herein, LendUs has materially breached the contract between Keefe and LendUs, and Keefe is entitled to relief.

90. Keefe claims all damages that he is entitled to under this cause of action as a consequence of LendUs's conduct.

### COUNT IV
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (MFI Bonus)

91. Keefe incorporates all paragraphs herein as if fully restated.

92. A valid contract existed between Keefe and Regency by virtue of Keefe's acceptance of the terms of the Offer Letter.

93. LendUs assumed Regency obligations under the contract when Regency was reincorporated as LendUs.

94. LendUs impliedly agreed not to do anything to destroy or injure Keefe's right to receive the benefits of the Offer Letter, specifically the payment of the MFI Bonus.

95. LendUs failed to discuss and agree with Keefe on a formula to calculate and pay the MFI Bonus.

96. LendUs did not pay Keefe the MFI Bonus.

97. LendUs' failure to fulfill its obligations under the terms of the Offer Letter constitute a breach of the implied covenant of good faith and fair dealing and Keefe is entitled to relief.

98. Keefe claims all damages that he is entitled to under this cause of action as a consequence of LendUs's conduct.

## COUNT V
## Award of Attorney's Fees
## 29 U.S.C 1132(g)(1)

99. Keefe incorporates all paragraphs herein as if fully restated.

100. If Keefe prevails on any of his foregoing claims, he will seek a post-judgment award of attorney's fees, costs and interest as provided for by contract, statute and/or decisional law.

## PRAYERS FOR RELIEF

101. WHEREFORE, Keefe respectfully requests that the Court:

    A. Enter judgment on all Counts;

    B. Award Keefe all damages to which he is entitled;

    C. Award Keefe his reasonable attorney's fees and litigation costs; and

  D. Grant such further relief as is necessary and proper.

            Respectfully submitted,

            QUENTIN KEEFE,

            By his attorneys,

            SHAHEEN & GORDON, P.A.,

February 3, 2020      /s/ Timothy J. McLaughlin
            Steven M. Gordon (NH Bar # 964)
            Timothy J. McLaughlin (NH bar # 19570)
            James J. Armillay Jr. (NH Bar # 271651)
            107 Storrs Street
            P.O. Box 2703
            Concord, NH 03302
            (603) 225-7262
            sgordon@shaheengordon.com
            tmclaughlin@shaheengordon.com
            jarmillay@shaheengordon.com