```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Quentin Keefe

    v.                                                    Civil No. 20-cv-195-JD
                                                          Opinion No. 2020 DNH 099

LendUs, LLC

## O R D E R

Quentin Keefe brought suit against his former employer, LendUs, LLC, seeking in part to enforce the terms of the Executive Incentive Bonus Program under the Employee Retirement and Income Security Act ("ERISA"). He contends that after his employment terminated, LendUs failed to pay him the benefits that were owed to him. LendUs moves to dismiss Counts I, II, and V on the ground that Keefe has not alleged ERISA claims.

## Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and construes reasonable inferences in the plaintiff's favor. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). "To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." Rios-Campbell v. U.S. Dept. of

Commerce, 927 F.3d 21, 24 (1st Cir. 2019) (internal quotation marks omitted). The purpose of the plausibility standard is to "weed out cases that do not warrant either discovery or trial." Id. (internal quotation marks omitted).

## Background

Keefe was a co-founder and chief executive officer of Regency Mortgage Corp. In December of 2014, Keefe sold Regency to RPM Holdings I, LLC. Keefe was employed by RPM as president and chief executive officer of Regency. On January 12, 2017, LendUs became the successor in interest to Regency when Regency was reincorporated.

Keefe received salary and benefits provided by the Executive Incentive Bonus Program ("Program"). The Program states that its purpose is to retain Keefe as an executive employee of Regency by providing him "with an opportunity to receive annual bonuses and a long-term interest in the profits of Regency." Doc. 11-1, at *2. The Program also was "intended to be exempt from the reporting and disclosure requirements of Title I of ERISA because it is an unfunded plan maintained by an employer for the purpose of providing benefits for a select group of management or highly compensated employees." Id. Article II provides the terms for annual bonuses, and Article III provides for the settlement of interest in net profits.

Keefe contends that his annual bonus for 2018 was at least $1,027,116 and that he was not paid that amount. He contends that his interest in net profits, the settlement amount, was 20% of the net profits of the business, which was payable within sixty days after the termination of his employment. He states that the settlement amount is $3,592,471 and has not been paid.

Keefe was an employee of LendUs after Regency was reincorporated. He attempted to negotiate with the chief executive officer of LendUs for early retirement but that was unsuccessful. LendUs terminated Keefe's employment on December 31, 2018.

When he was unable to obtain the benefits that he believed he was due, Keefe brought suit. Keefe alleges three claims under ERISA and also alleges claims for breach of contract and breach of the covenant of good faith and fair dealing. In the ERISA claims, he seeks enforcement of the 2018 annual bonus provision of the Program, Count I; enforcement of the bonus settlement amount, Count II; and attorneys' fees, Count V.

## Discussion

LendUs moves to dismiss the ERISA claims, Counts I, II, and V, on the ground that the Program is not an ERISA plan and is not subject to enforcement under ERISA. Keefe contends that the Program is a "top hat" plan that is enforceable under ERISA. In

reply, LendUs contends that Keefe has not alleged facts to show that the Program is a top hat plan, and Keefe argues in his surreply that the bonus settlement amount was a top hat plan that provided deferred compensation.

   A.   Legal Framework

Employee benefit plans under ERISA may provide welfare or pension benefits. 29 U.S.C. §§ 1002(1) & 1002(2)(A); M & G Ploymers USA, LLC v. Tackett, 574 U.S. 427, 434 (2015). Pension benefit plans provide retirement income or benefits that result from a deferral of income. § 1002(2)(A). A top hat plan is an ERISA plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2); Alexander v. Brigham & Women's Physicians Org., Inc., 513 F.3d 37, 42 (1st Cir. 2008). Top hat plans are not subject to the substantive ERISA requirements that are intended to safeguard employee benefit funds. Id. Top hat plans, however, are subject to ERISA enforcement provisions. Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 46 n.3 (1st Cir. 2000).

"The fact that a plan is 'established as a means to retain valuable employees' does not disqualify it from top hat status it otherwise deserves." Alexander v. Brigham and Women's

4

Physicians Org., Inc., 467 F. Supp. 2d 136, 142 (D. Mass. 2006) (quoting Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 287 (2d Cir. 2000)); accord Tolbert v. RBC Cap. Mkts. Corp., 2015 WL 2138200, at *4 (S.D. Tex. Apr. 28, 2015). The use of the term "primarily" in the statute means the primary benefit of the plan, not the primary use of the plan. Id. at *5 (citing U.S. Dept. of Labor ERISA Opinion 90-14A, at 2). For that reason, a plan that states a primary purpose of retaining valuable employees may nevertheless be a top hat plan if the primary benefit is deferred compensation. Id.

On the other hand, an ERISA plan does not include plans for payments made as bonuses for work performed, "unless such payments are systematically deferred to the termination of covered employment or beyond." 29 C.F.R. § 2510.3-2(c). An annual bonus plan, when no annual bonuses have been deferred by the employer, is not an ERISA top hat plan. Baumgardner v. Cannon, 2018 WL 2722453, at *4 (D. Colo. June 6, 2018). A plan whose primary purpose is to provide bonuses rather than deferred compensation is not an ERISA top hat plan. Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 932 (8th Cir. 1999).

B. ERISA Plan

The parties do not dispute that the Program was unfunded and was intended for a select employee, Keefe, as required for

an ERISA top hat plan.  LendUs argues that the Program was a bonus plan intended to retain Keefe as an employee and did not have as its primary purpose providing deferred compensation. Keefe contends that the Program was a top hat plan and focuses on the settlement amount provided in Article III of the Program. In response, LendUs argues that the settlement amount provided in Article III, taken by itself, is not an ERISA plan and is instead a single lump sum payment.

    1.   Employee Benefit Plan Requirements

To qualify as an ERISA plan, employee benefits must meet certain criteria.  "[A]n employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries." Belanger v. Wyman-Gordon Co., 71 F.3d 451, 454 (1st Cir. 1995). A one-time lump-sum payment, such as a severance payment, does not require ongoing administration and, therefore, is not an ERISA plan. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 12 (1987).  In one test for an ERISA plan, the court must determine whether "(1) the employer has manifested its intention to provide benefits on a regular and long-term basis; (2) a reasonable person would be able to ascertain the plan's intended benefits, the class of beneficiaries, the source of financing,

and the procedures for recovering benefits, and (3) the benefits are to be provided pursuant to an on-going administrative scheme." Simmons v. Serv. Credit Union, No. 17-CV-159-PB, 2018 WL 1251628, at *2 (D.N.H. Mar. 12, 2018).

2. Bonus Plan

Article II of the Program provides for the annual bonuses. Although the annual bonuses were not paid immediately, they were not deferred compensation for purposes of providing an employee pension benefits. The fact that the 2018 bonus has not been paid does not make the annual bonus provision a deferred income plan. The purpose of a top hat plan must be to provide deferred income, and that is not the purpose of the annual bonuses.

3. Settlement Amount

On the other hand, under Article III, the settlement amount was deferred until the five-year anniversary of the effective date of the Program (December 1, 2019) or Keefe's termination, whichever was later. Therefore, Keefe could not receive the settlement amount until the termination of his employment. That arrangement suggests deferred compensation.

A pension or severance plan is an ERISA plan, however, only if it requires an ongoing administration after employment ends. Fort Halifax, 482 U.S. at 12. "Simple or mechanical

determinations do not necessarily require the establishment of such an administrative scheme; rather, an employers' need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." Miller v. Starkey Labs., Inc., 299 F. Supp. 3d 1046, 1053 (D. Minn. 2018).  Whether a plan is an ERISA plan depends on the employer's obligations in administering the benefits so that a "one-shot, take-it-or-leave-it incentive" without an ongoing administrative scheme is less likely to be an ERISA plan.  O'Connor v. Commonwealth Gas. Co., 251 F.3d 262, 267 (1st Cir. 2001).

LendUs argues that the settlement amount part of the Program is not an ERISA plan because it is simply a one-time bonus, in the nature of a severance bonus.  LendUs further argues that the settlement amount does not require any administration for the payment to be made.  Keefe argues that the settlement amount does require administration, making it an ERISA plan.

Keefe points to the provisions of the Program for claiming benefits.  Article 3.1 of the Program provides the means for determining the settlement amount.  That process occurs within sixty days after termination of employment and requires liquidation of Keefe's interest in profits based on specified

8

calculation.  The present value of Keefe's interest is to be determined by an independent accounting firm, which is acceptable to both Keefe and LendUs.  The method of the appraisal is also provided.

Article VII addresses the administration of the Program. The Program is to be administered by a designated person. Disputes may be subject to arbitration.  The administrator is required to keep all necessary records and to furnish information to Keefe, as the administrator determines is necessary.

Claims for benefits under the Program are to be submitted to the administrator.  Art. 7.2.  Claims must be decided within 90 days of submission unless extended to 120 days.  A denied claim is subject to a review process.

The process provided by the Program for paying the settlement amount appears to extend beyond a simple one-time severance payment.  Instead, that process requires administration of the Program to continue after termination. Based on the motion to dismiss standard, the court cannot determine as a matter of law that the settlement amount part of the Program is not an ERISA top hat plan.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 13) is granted as to Count I and denied as to Counts II and V.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

June 8, 2020

cc: Counsel of record.