```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Quentin Keefe

    v.                                    Civil No. 20-cv-195-JD
                                              Opinion No. 2021 DNH 125
LendUS, LLC


O R D E R

Quentin Keefe brings claims against his former employer, LendUS, LLC as the successor of Regency Mortgage Corporation, seeking to enforce the terms of the Executive Incentive Bonus Program under the Employee Retirement and Income Security Act ("ERISA") and state law. LendUS brings related counterclaims against Keefe. Keefe moves to compel LendUS to produce copies of audited financial statements and tax returns, which LendUS has refused to produce based on a variety of objections.


Standard of Review

Under the federal rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). After providing notice and making the necessary effort to resolve the discovery issue, a party may move to compel another party to produce requested documents. Fed. R. Civ. P. 37(a)(1) & 37(a)(3)(B). The moving party bears the burden of making an initial showing that the

requested documents are relevant, and if that showing is made, the opposing party bears the burden of showing that the requested production is improper.[1] Philips Med. Sys. P.R., Inc. v. Alpha Biomedical & Diagnostic Corp., 2021 WL 150411, at *4 (D.P.R. Jan. 15, 2021); Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005).

Background[2]

Keefe was a co-founder and chief executive officer of Regency Mortgage Corporation. In December of 2014, Keefe sold Regency to RPM Holdings I, LLC. Keefe was employed by RPM as president and chief executive officer of Regency. Keefe alleges that LendUS became the successor in interest to Regency after Regency was reincorporated on January 12, 2017, and after a later name change. In its amended answer, LendUS asserts that the allegations about successor status are legal conclusions and denies the allegations to the extent a response is required.

---

[1] Although LendUS states in the caption to its objection to the motion to compel that a hearing is requested on the motion, it did not comply with the requirements of Local Rule 7.1(d). Therefore, no hearing was held.

[2] The background information is taken in part from the amended complaint, as provided in the court's order granting in part and denying in part LendUS's motion to dismiss. Doc. no. 20.

Keefe received salary and benefits provided by the Executive Incentive Bonus Program ("Program"). The Program states that its purpose is to retain Keefe as an executive employee of Regency by providing him "with an opportunity to receive annual bonuses and a long-term interest in the profits of Regency." Doc. 11-1, at *2. The Program also was "intended to be exempt from the reporting and disclosure requirements of Title I of ERISA because it is an unfunded plan maintained by an employer for the purpose of providing benefits for a select group of management or highly compensated employees." Id. Article II provides the terms for annual bonuses, and Article III provides for the settlement of interest in net profits.

In the amended complaint, Keefe alleges that under the Program he was entitled to an annual bonus and that he received annual bonuses for the fiscal years 2015 through 2017. He alleges that he was also entitled to an annual bonus for 2018, which has not been paid. He alleges that the annual bonus amount for 2018 was 20% of the net profits for that fiscal year, which was at least $1,027,116.

Keefe also alleges that he was entitled to a settlement bonus after his termination. He alleges that the bonus settlement amount "is the equivalent of the then-present value of Keefe's twenty percent (20%) interest in Net Profits of the Business." Doc. no. 11, ¶ 28. He further alleges that the

3

bonus settlement was payable within sixty days after the termination of his employment. He asserts that the bonus settlement amount is at least $3,592,471 and has not been paid.

Keefe alleges that he was an employee of LendUS after Regency was reincorporated. He attempted to negotiate with the chief executive officer of LendUS for early retirement but that effort was unsuccessful. LendUS terminated Keefe's employment on December 31, 2018.

When he was unable to obtain the benefits that he believed he was due, Keefe brought suit. Keefe alleged three claims under ERISA and also alleged claims for breach of contract and breach of the covenant of good faith and fair dealing. Count I, which sought enforcement of the annual bonus for 2018 under ERISA, has been dismissed. Count II seeks enforcement of the bonus settlement amount under ERISA. Counts III, IV, VI, and VII allege state law claims for breach of contract and breach of the implied duty of good faith and fair dealing. In Count V, Keefe seeks attorneys' fees under ERISA. LendUS brings counterclaims against Keefe for breach of loyalty, breach of the covenant of good faith and fair dealing, interference with business relations, and breach of contract.

Discussion

Keefe moves to compel LendUS to produce copies of its audited financial statements for fiscal years 2015-2018 "with outside CPA's opinion letter and all footnotes" and LendUS's federal and state tax returns for fiscal years 2015-2018. Doc. no. 45, at *2. In its responses to the discovery requests, LendUS objected on the grounds that the requested discovery is not relevant, material, or reasonably calculated to lead to the discovery of admissible evidence because the issues in the case "relate exclusively to the finances of Regency, not the totality of LendUS." Id. LendUS also objected on the grounds that the requested information was protected by work product and attorney client privileges and is beyond the scope of discovery under Rule 26. In response to the motion to compel, LendUS argues that its audited financial statements are not relevant, that the information is otherwise available, and that discovery is barred by its right to privacy.

A. Relevance

In support of his motion, Keefe states that he needs and his expert witness has requested copies of LendUS's audited financial statements and tax returns to evaluate "certain allocated intercompany expenses including whether such costs are being increased and applied by LendUS to its Regency division in

order to depress the value of Keefe's claims." Doc. 45, at *1. LendUS contends that Keefe's discovery must be limited to financial information about Regency, which it represents has already been produced.

As LendUs sets forth in its objection, Keefe's annual bonus and bonus settlement amounts, as provided in the Program, are calculated from the annual net profits and losses of Regency. The calculation of net profits and losses is to be made "in accordance with GAAP" and in a manner that is consistent "with past practice for Regency's audited financial statements."[3] Doc. 47, at *4. Net profits and losses are the net income or net loss of Regency. Id.

Keefe states that he is seeking the requested information in order to calculate the net profits of Regency for his bonus calculations. He contends that he needs the audited financial statements and tax returns of LendUS to see what company expenses were allocated to Regency, from other parts of the company or from other divisions, so that his expert can determine what profits and losses were appropriately allocated to Regency for purposes of the net profits and losses calculation. Keefe is not proposing, as LendUS charges, that his bonuses are based on the entire net profits of LendUS.

---

[3] GAAP refers to Generally Accepted Accounting Principles.

LendUS does not dispute that it began allocating expenses among its divisions by 2018, while Keefe was employed there. It also does not dispute that Regency's net profits and losses are relevant to Keefe's claims for bonuses. Keefe has shown that the requested information is relevant to the determination of net profits and losses for purposes of calculating the bonuses that he claims in this case.

Therefore, the relevancy requirement is satisfied.

B. Available Elsewhere

LendUS contends that the requested discovery is improper because the same information is available through other sources and from information already disclosed.[4] LendUS has produced financial statements from the Regency and MFI divisions, which are not audited. Keefe is seeking audited financial statements and tax returns and contends that the disclosed information is insufficient for its expert's evaluation. LendUS has not shown that Keefe is required to seek financial information through

---

[4] To the extent LendUS now argues that it has a right to privacy with respect to the requested information, that objection was not raised in response to the discovery requests and has been waived. Katz v. Liberty Power Corp., LLC, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020). Further, the parties agreed to a protective order, and LendUS has not shown that the order is insufficient to protect sensitive information. LendUS states in its objection that it was filing a motion for another protective order, but no such motion was filed.

other discovery means rather than directly through production of the requested financial documents.

### C. Reasonable Expenses

In the conclusion to the motion, Keefe requests an award of fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A). When a motion to compel is granted and after giving the nonmoving party an opportunity to be heard, the court must order payment of the moving party's reasonable expenses incurred in filing the motion, unless reasons or circumstances exist that weigh against the award. Fed. R. Civ. P. 37(a)(5)(A). Therefore, as provided below, Keefe is given the opportunity to file a motion for an award of reasonable expenses, and LendUS is given an opportunity to respond. That determination will be made in response to the motion and response.

### Conclusion

For the foregoing reasons, Keefe's motion to compel (document no. 45) is granted. LendUS shall produce the discovery requested in Keefe's First Set of Requests for Production of Documents, Requests Nos. 9 and 10 and may designate that certain responses are subject to the protective order, if appropriate.

Keefe may file a motion for an award of reasonable expenses incurred in filing this motion **on or before August 25, 2021,** which shall be supported by appropriate affidavits and billing records.  LendUS may file a response **within fourteen days** after the motion is filed.

SO ORDERED.

Joseph A DiClerico, Jr.
United States District Judge

August 11, 2021

cc:  Counsel of record.