UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Quentin Keefe

    v.                                          Civil No. 20-cv-195-JL
                                                  Opinion No. 2023 DNH 022P

LendUS, LLC

## ORDER ON DEFENDANT'S MOTIONS IN LIMINE

Quentin Keefe is seeking payment of bonuses that he contends LendUS, LLC owed him after his employment was terminated, and LendUS brings counterclaims against Keefe arising from the circumstances that lead to his termination. LendUS moves in limine for evidentiary rulings about testimony and evidence that LendUS expects Keefe to introduce at trial and about one document that LendUS intends to introduce. The court addresses each motion in turn.

The court reminds the parties that the rulings herein are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial. Furthermore, these rulings are limited to grounds argued in the parties' filings and raised at the final pretrial conference. The court reserves the right to assess other factors at trial, such as authenticity, hearsay, and best evidence, see Fed. R. Evid. 800 et seq., 900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by counsel.

### I. Testimony and evidence about Regency resignations

LendUS moves to prevent Keefe from testifying about any reasons Regency employees resigned from LendUS on the grounds that such testimony is inadmissible

speculation and hearsay. LendUS also moves to exclude all e-mails and other documents that include reasons for the employees' decisions to resign as inadmissible hearsay. In response, Keefe opposes such a "blanket" exclusion order and contends that admissibility should be determined at trial. Keefe argues that, because the employees were all LendUS employees when they communicated their dissatisfaction with LendUS to him both orally and in writing, their statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D). He also argues that his opinions about the reasons Regency employees left LendUS are based on his communications with the employees and are not hearsay.

Hearsay is an out-of-court statement that is offered to prove the matter asserted in the statement and is not admissible. Fed. R. Evid. 801(c) & 802. Under the familiar "admission of party opponent" rule, however, out-of-court statements offered for their truth are not hearsay, f they are "offered against an opposing party and: . . . [were] made by the party's agent or employee on a matter within the scopfe o that relationship and while it existed." A statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

No such "blanket" ruling can issue on the admissibility of possible testimony and evidence about the reasons employees resigned from the Regency division of LendUS. With a proper foundation, some statements and evidence may be admissible as party-opponent admissions under Rule 801(d)(2)(D). Some statements may not be offered for their truth, and LendUS may open the door to allow certain evidence. LendUS has not presented any particular statement or document that would enable the court to make these determinations, instead seeking a "blanket" exclusionary ruling. If such evidence is

2

eventually admitted, LendUS may request a limiting instruction if necessary to cabin the use of evidence within its admissible purpose. See Fed. R. Evid. 105. On the other hand, evidence may be excluded, even if an exception to the hearsay rule applies, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court will undertake this analysis in response to proffers of, and objections to, evidence at the appropriate time.

The motion in limine to exclude testimony and evidence of reasons for employee resignations is denied without prejudice to raise appropriate objections at trial.[1]

## II. **Evidence of witnesses' personal wealth**

LendUS moves to exclude any inquiry into and evidence of the personal wealth of LendUS's CEO, Robert Hirt, and former CFO, Ava Noack, who will be witnesses at trial. LendUS contends that such information is irrelevant and is barred under Rule 403 because it would be more unfairly prejudicial than probative. In response, Keefe states that he intends to introduce evidence of Noack's financially advantageous relationship with LendUS after she started her own company to show her testimonial bias in favor of Hirt and LendUS. Keefe argues that evidence of Hirt's wealth and compensation is relevant to his defense against LendUS's counterclaims that Keefe's mismanagement caused the demise of Regency.

---

[1] Document no. 88.

**Ava Noack**.  Keefe asserts, supported by Noack's deposition testimony, that she left LendUS at the beginning of 2020 and started her own consulting company.  Noack through her new company provides consulting services to LendUS, which are the same or similar to her work when she was CFO of LendUS.  In 2021, the value of Noack's consulting contract with LendUS was about a million dollars.  Keefe contends that Noack's relationship with LendUS is relevant to show that she has a reason, as a witness, to be biased in favor of LendUS.

"Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." United States v. Abel, 469 U.S. 45, 52 (1984).  Evidence of a witness's bias is relevant because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony."  Id. at 51.  A relationship between the witness and a party is probative of the witness's bias in favor of that party.  See United States v. Sumlin, 956 F.3d 879, 890-91 (6th Cir. 2020); Abernathy v. E. Ill. Railroad Co., 940 F.3d 982, 992 (7th Cir. 2019); Nadeau v. Hunter Lawn Care, LLC, 585 F. Supp. 3d 158, 160 (D. Mass. 2022).

Evidence of Noack's employment at LendUS and her subsequent and continuing contractual relationship with LendUS is relevant to the issue of her potential bias in favor

4

of LendUS. That evidence has not been shown to be unfairly prejudicial, is subject to cross-examination, and, as evidence admissible for a limited purpose, may warrant a limiting instruction if requested. See Fed. R. Evid. 105.

**Robert Hirt**. Keefe represents that he intends to introduce evidence of Hirt's compensation at LendUS and his individual wealth to defend against LendUS's counterclaims against him that his mismanagement caused the Regency division employees to resign. Keefe states that he intends to show that Hirt, as CEO of LendUS, made certain corporate financial managerial decisions that caused dissatisfaction among Regency division employees, leading (in whole or in part) to their resignations. The evidence Keefe cites, however, pertains to LendUS's corporate assets (private jet travel and a corporate penthouse), but not to Hirt's personal wealth.

Under most circumstances, evidence of a defendant's wealth may be relevant only in limited circumstances that do not apply here. Jones v. Jasper Wyman & Son, 2022 WL 16854267, at *3-*4 (D. Me. Nov. 10, 2022); Curtis Mfg. Co., Inc. v. Plasti-Clip Corp., 933 F. Supp. 94, 101 (D.N.H 1995). Hirt is a witness, not the defendant. In the circumstances presented, evidence of Hirt's compensation and personal wealth might aggravate the sensibility of, and distract, more modestly compensated or resourced jurors, and thus be more unfairly prejudicial than probative. Fed. R. Evid. 403. Evidence of LendUS's corporate assets, however, may be relevant in the circumstances that Keefe suggests if properly supported by evidence of employee awareness. See Fed. R. Evid. 104(b) (conditional relevance). The admissibility determination must be made in the context of trial.

LendUS's motion in limine to exclude all evidence of Noack and Hirt's compensation and personal wealth is denied as to evidence of Noack's relationship with LendUS, including the compensation paid to her or her company as a consultant, and is granted as to evidence of Hirt's personal wealth and compensation but not as to LendUS's corporate assets and expenditures.[2]

### III. Evidence of other lawsuits, investigations, and character

LendUS moves to exclude evidence of other lawsuits and disputes by or against LendUS or any of its officers or managers as irrelevant under Federal Rule of Evidence 404(b). LendUS also seeks to exclude other so-called "character evidence," such as evidence it delayed paying the employees who resigned from employment there, under Rules 404(a) and (b). In response, Keefe contends that LendUS's motion is overly broad because it addresses character evidence generally rather than specifically and that evidence of Hirt's personal character and credibility is relevant to the reasons Regency division employees left LendUS, for which LendUS holds Keefe responsible in its counterclaims.

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Evidence of that a person committed other wrongs or misconduct is not admissible to prove "a person's character in order to show that on a particular

---

[2] Document no. 89.

occasion the person acted in conformity with the character." Fed. R. Evid. 404(b)(1). Evidence of other wrongs or misconduct "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Keefe agrees that he will not introduce evidence of other lawsuits involving Hirt or his companies. He proffers evidence, however, that Hirt's personality, demeanor, dishonesty, and personal conduct caused some Regency division employees to resign, and notes that LendUS has accused him (Keefe) of causing those resignations in its defenses and counterclaims. If established by competent evidence and connected to resignations, evidence of Hirt's decisions, conduct, and relationships at LendUS and how those actions affected the Regency division employees may be admissible to show why the employees resigned. See Fed. R. Evid. 104, 401, 402, & 404. Here again, the court declines to issue a blanket exclusion. Admissibility will be determined in the context of trial.

LendUS's motion to exclude character evidence is granted as to evidence of other lawsuits and is otherwise denied.[3]

### IV. Hostile witnesses

LendUS asks the court to designate certain witnesses as hostile under Federal Rule of Evidence 611(c)(2) and to allow leading questions on direct examination at trial. The

---

[3] Document no. 90.

identified witnesses are Maureen LeMay, Mark McCauley, Dianne Morrissette, and Joan Tyrell.  LendUS represents that these witnesses were Regency division executives and that all but LeMay resigned in the fall of 2018 when most of Regency's employees left to work at a competitor company, CMG Mortgage, Inc.  Keefe responds that LendUS will improperly use leading questions to tell its story about the resignations of the Regency division employees, that it is not appropriate to assume these witnesses will be hostile prior to trial, and that the ruling should instead be based on their demeanor and attitude during their testimony at trial.

"Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.  Ordinarily, the court should allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2).  "'A 'hostile' witness, in the jargon of evidence law, is not an adverse party but a witness who shows himself or herself so adverse to answering questions whatever the source of the antagonism, that leading questions may be used to press the questions home.'" United States v. Greaux-Gomez, 52 F.4th 426, 438 (1st Cir. 2022) (quoting Rodriguez v. Banco Cent. Corp., 990 F.2d 7, 12-13 (1st Cir. 1993)).  A witness is identified with an adverse party, for purposes of Rule 611, when the witness is "an employee, agent, friend, or relative of an adverse party."  Pryor v. Corrigan, 2023 WL 1100436, at *21 (N.D. Ill. Jan. 30, 2023).

The identified witnesses may or may not be hostile to LendUS within the meaning of Rule 611(c)(2).  The witnesses were deposed, and LendUS does not quote or cite deposition testimony to show that any of the witnesses did not answer questions directly,

8

or provide any documents or other more concrete bases on which to make a hostility finding. In these circumstances, LendUS has not established grounds for a <u>pretrial</u> hostility ruling.

LendUS's motion to designate certain witnesses as hostile to authorize leading questions on direct examination at trial[4] is denied without prejudice to seeking such rulings during trial.[5]

### V. **LendUS's Corporate Status**

LendUS moves to exclude from the trial all evidence about its acquisition in 2022 by Cross Country Mortgage. In support, LendUS argues that the acquisition is irrelevant to the issues in the case and that it would take unnecessary time to explain the acquisition and the resulting changes in structure at LendUS. Keefe states that he only intended to introduce evidence of the acquisition to show that it is futile for him to exhaust administrative remedies for purposes of his ERISA claim, Count II.

Count II will be tried to the court, not to the jury. Therefore, evidence of LendUS's current corporate status is not relevant to issues at trial. LendUS's motion in limine to exclude evidence at trial of its corporate structure is granted.[6]

---

[4] Document no. 91.

[5] If there is sufficiently strong basis for such a request, the court may permit LendUS's counsel to conduct a voir dire examination – either in or outside the presence of the jury, pending on circumstances – to facilitate this determination.

[6] Document no. 92.

**VI. <u>Memorandum from expert to Keefe</u>**

LendUS asks the court to rule that a memorandum sent to Keefe from his expert witness, Richard Maloney, in September of 2018 is admissible at trial. LendUS contends that the memorandum is not privileged and that it is relevant to the calculation of the Bonus Settlement Amount, § 3.1 of the Executive Incentive Bonus Program. Keefe does not object to LendUS's proposed use of the memorandum.

Keefe is seeking to enforce the Bonus Settlement Amount in the ERISA claim, Count II. That claim is being tried to the court and will not be presented to the jury. Therefore, the memorandum will not be presented during the jury trial. If appropriate, LendUS may use the memorandum in the bench trial to the court of Count II.[7]

**<u>Conclusion</u>**

For the foregoing reasons, LendUS's motions in limine are resolved as follows:

Doc. no. 88 – denied without prejudice to raising appropriate objections at trial.

Doc. no. 89 – denied as to Ava Noack and granted as to Hirt's personal compensation and wealth but not as to LendUS's corporate assets and expenditures.

Doc. no. 90 – granted as to evidence of other lawsuits and otherwise denied without prejudice to raising appropriate objections at trial.

Doc. no. 91 – denied without prejudice to raising appropriate objections at trial.

---

[7] The court notes, however, that LendUS represents the memorandum pertains to the interpretation of the provisions describing the agreed-to method of calculating the BSA. The court has interpreted § 3.1 of the Program, the calculation of the BSA, and that ruling is law of the case, not subject to change. <u>See</u> doc. no. 79.

Doc. no. 92 – granted.

Doc. no. 93 – granted.

**SO ORDERED.**

*/s/ Joe Laplante*
Joseph N. Laplante
United States District Judge

Dated:  March 2, 2023

cc:	James Joseph Armillay, Jr., Esq.
	William E. Christie, Esq.
	Timothy John McLaughlin, Esq.
	Tara E. Lynch, Esq.
	Stephen Joseph Orlando, I, Esq.